JOHN DEN ex dem. SENECA SINNICKSON and JAMES BRUERE SINNICKSON v. REBECCA DREW.

Joseph Copner in his will uses the following words, "I do hereby direct and order, that all the remainder of the rents, profits and residue of my estate, after the payment of my just debts, be equally divided between my wife Jane, my son Samuel, and my two grand children, Sinneck and Jane." *Held*, that the premises in question, being a four acre lot, not specifically mentioned or disposed of, passed by this residuary clause to the devisees therein named.

The word *estate* may mean real or personal estate, or it may be descriptive of the locality or quantity of land only, or of the quantity of time or interest therein, or of both ; and when it is descriptive of the subject, or property devised, it will be considered as descriptive also, of the interest in the subject, unless manifestly used in a different sense.

The terms *residue of my estate* will not be restrained and qualified to mean personal estate only, unless there are circumstances calculated to show that such was the testator's intention.

---

This was an action of ejectment, and came on to be tried before the late Chief Justice Ewing, at the Circuit Court, held at Salem in December, 1831, when the parties, by their attornies, agreed upon the following state of the case :

Den *v.* Drew.

Joseph Copner being seized of the premises in question, in and by his last will and testament, made and executed his last will and testament, bearing date the 14th June, 1809, and thereby devised as follows : " I give unto my nephew Samuel Gilmore that five acre lot of wood-land at the Nook, and the five acre lot situated on the main road, with the house and blacksmith's shop and improvements thereon, to him, his heirs and assigns. My will is, and I do hereby direct and order, that all the remainder of the rents, profits and residue of my estate, after the payment of my just debts, be equally divided between my wife Jane, my son Samuel, and my two grandchildren Sinneck and Jane Sinnickson, share and share alike " (prout said last will and testament, duly proved and recorded according to law.) The said Joseph Copner died so as aforesaid, seized in the month of October, 1809, without having revoked or altered his said will, leaving issue Samuel Copner his son, and Seneca Sinnickson (one of the lessors of the plaintiff) and Jane Sinnickson, the son and daughter of his daughter Sarah, by Andrew Sinnickson, her first husband, and Ann Sinnickson, now Ann Blackwood, the daughter of his said daughter Sarah, by Andrew Sinnickson, her second husband, and his widow Jane Copner, him surviving.

The premises in question, are four acres of land adjoining the five acre lot devised to Samuel Gilmore, which the testator purchased of Joseph Allman, being, at the date of the will, and the death of the testator, uninclosed.

Samuel Copner, claiming under the will of his father, sold and conveyed the said lot to David Brown, who built a house thereon, and afterwards sold the premises to the defendant, who has been in possession ever since, (prout said several deeds.)

Jane Copner, the widow of Joseph Copner, by her last will and testament, bearing date 29th March, 1814, among other things, devised as follows ; " I give and bequeath unto my son, Samuel Copner, all the residue of my estate, of whatever nature soever." (Prout said will duly proved and recorded.) The same Jane Copner died in the month of March, 1819, without altering or revoking the said will, leaving the said Samuel Copner her surviving.

Jane Sinnickson, the grand daughter of the testator, Joseph

Copner, by her last will and testament executed in due form of law to pass real and personal estate, bearing date the 26th May, 1823, devised as follows, to wit: "I give and bequeath all the residue of my estate, both real and personal, to my nephew James B. Sinnickson, and in case he should die without children, my will then is, that both my real and personal estate be divided equally among his surviving brothers and sisters" (prout said will duly proved and recorded.) The said Jane Sinnickson died in the month of June, 1823, without revoking or altering the said will, leaving the said James B. Sinnickson, (one of the lessors of the plaintiff) her surviving.

Seneca Sinnickson attained the age of twenty-one on the 12th January, 1818, and the said Jane Sinnickson was two years younger.

The defendants confess lease, entry and ouster (prout *lex postulat*) and also that at the time of the service of ejectment in this case, the defendant was in possession of the premises in question.

It is agreed, that if upon the foregoing facts, the court should be of opinion that the lessors of the plaintiff are entitled to the whole or any part of the premises in question, then judgment shall be entered for the plaintiff for such part, with six cents damages and six cents costs, and if the court should be of opinion that the lessors of the plaintiff are not entitled to recover any part of the said premises, then judgment of nonsuit to be entered with costs of suit.

*Wall* for plaintiff.

*Field* and *P. D. Vroom* for defendant.

The opinion of the court was delivered by the Chief Justice.

HORNBLOWER, C. J. The only question submitted to the court in this cause, is, whether a certain lot of land not specifically mentioned, or disposed of in the will of Joseph Copner, deceased, passed under the residuary clause contained therein. If it did, then the lessors of the plaintiff are entitled to recover; if it did not, then there must be judgment for the defendant. There is nothing in the introductory clause of the will, to show that the testator had any *special* intention to make a testamentary disposition of his *whole estate*—but the presumption is that such was

Den *v.* Drew.

his general intention, for the second clause in his will does contain a direction affecting the *whole* of his real estate, for a temporary purpose, though it does not make a final disposition of it. He authorizes and enjoins it upon his executors to rent out *all* his plantations and tracts of land, for the term of five years, except the lands afterwards devised to his wife, and then appropriates the rents thereof, together with the whole of his personal estate, to the payment of his debts and funeral expenses. The testator then proceeds, and item by item, devises different plantations, houses and lands, to the several devisees, who were the objects of his bounty ; and in all probability supposed he had given away all his lands. He, however, added a residuary clause, in the following words, " I do hereby direct and order, that all the remainder of the rents, profits, and residue of my estate, after the payment of my just debts, be equally divided between my wife Jane, my son Samuel, and my two grand children, Sinneck and Jane."

In the case of *Den* v. *Snitcher,* the attention of the court was called to this clause of the will of Joseph Copner, not for the purpose of deciding what did pass under it ; but to enquire whether any argument could be drawn from the language in which it is conceived, to favor the idea, that the testator in a previous part of the will, had intended to convey only an estate in fee tail, to his son Samuel. In that case I expressed an opinion, that I could find in this clause, no indication of such an intent ; and felt rather inclined to believe, from the peculiar phraseology employed by the testator, in connection with the fund he had raised by a previous part of his will, for the payment of his debts, that the surplus of that fund was what he had in his mind when he framed this residuary clause. But that was a very different question from the one now under consideration. It cannot be denied, that the clause standing by itself uncontroled and unexplained by other parts of the will, is expressed in terms that will comprehend and pass real estate. But it is a question of intention ; that intention must be collected from the whole will and not from any clause taken by itself. The testator seems to have been a man of large property, and he has made very extensive and specific devises of different plantations and tracts of land. It is not likely therefore, that he intended to die intestate, as to

this four acre lot ; and on the other hand, it is equally impro-
bable that he meant by the residuary clause, to divide this
small remnant of his land into four parts. The probability is,
that it escaped his recollection ; yet it may have been his inten-
tion, by this sweeping clause, to dispose of such parts of his
property as he could not think of at the moment, and had not
specifically devised; and as the testator's language is sufficient,
and appropriate for the purpose, we must suppose that such was
his intention, unless we find ourselves restrained to a more lim-
ited construction of the residuary clause, by other parts of the
will.

If the testator had set out, with an expressed intention to
make a testamentary disposition of his whole property, I should
have had no doubt ; for though introductory words to that effect,
cannot enlarge the estate of a devisee, unless there are words
in the devise itself, sufficient to carry the degree of interest
contended for ; yet, they may assist to shew the intention of
the testator ; and courts will lay hold of them, as they will of
every other circumstance in a will, which may help them to
arrive at a right and true construction of it. 2 *Prest. on Real
Estates*, 188 ; *Hogan* v. *Jackson, Cowp.* 299 ; *Doe* v. *Spearing*,
6 *T. R.* 610 ; *Den* v. *Mellor*, 5 *T. R.* 563 ; *Goodright* v. *Stocker*,
5 *T. R.* 13. And in *Smith* v. *Coffin*, 2 *Hen. Bl. R.* 444, Mr.
Justice Buller, says, where it is apparent, in the introductory
part of the will, that the testator meant to dispose of the whole
of his property, and the expressions in the residuary clause,
may include real estate, it is to be taken in the largest sense,
in order to correspond with the introductory part.

But in this case, there is no such expressed intention, and we
are left to the words of the clause itself, for the meaning of the
testator. Those words are, " all the remainder of the rents,
profits, *and residue of my estate*, after payment of my debts." If
the words *rents and profits*, had stood alone, they could have
been satisfactory and exclusively referred to the remainder of
the *rents* which the testator had previously devoted to the pay-
ment of his debts and funeral expenses. But the words " resi-
due of my estate," cannot be so easily disposed of. It is true,
the word *estate*, is susceptible of different meanings, according
to the connection in which it is used, and the subject matter to

Den *v.* Drew.

which it is applied; it may mean real or personal estate; or it may be descriptive of the locality, or quantity of land, only; or of the quantity of time or interest therein, or of both; and when it is descriptive of the subject or property devised, it will be considered as descriptive also, of the interest in the subject, unless manifestly used in a different sense. 2 *Pres. on Estates*, 88, 101. And in *Roe* v. *Harvey*, 5 *Burr*. 2638, Lord Mansfield, with the concurrence of Willes and Ashurst, justices, said, " The word *estate*, carries every thing; unless tied down by particular expressions." It is not difficult to suppose, that the testator, having devoted the *rents* of his real estate for a period, and the whole of his personal estate, to the payment of his debts, was in this part of his will, only disposing of a possible surplus of those *rents*, and the residue of his *personal estate*, after the payment of his debts. But the connection between these two clauses of the will, are too remote to have much influence in giving a construction to the latter. To use the figurative language just quoted, the cord is too slender to tie down the word *estate*, as here used, to mean only the personal estate. There are a great many cases, it is true, in which the words used in a residuary clause, have been considered as sufficient in themselves to pass real estate, but in which they have been restrained to mean personal estate or chattels real only, from the influence of other words or expressions used by the testator, in connection with them. The case of *Roe* v. *Yeud*, 2 *New Rep.* 214, is one of that kind; the words were " all the remainder of my property whatsoever and wheresoever: " and though Sir James Mansfield considered the words sufficient to carry real estate, yet in the particular connection in which they were used, he considered it doubtful whether the testator so intended; and that doubt decided him in favor of the heir at law. Many other cases of that kind will be found collected in 2 *Prest. on Estates*, under the head of wills. But I can find no case in which the terms, " residue of my estate," have been restrained and qualified to mean personal estate only, unless there were circumstances calculated to raise more serious doubts of the testator's intention, than I can find on the face of this will. My opinion is, that the premises in question, being a four acre lot, passed, by the residuary clause, to the devisees therein named.

FORD, J. concurred.

CITED in *Den* v. *Young*, 4 *Zab.* 784.