RICHARD W. YORK v. WILLIAM H. MERRITT.

*Illegal Consideration—Fraud—Practice.*

A conveyance of land made by a debtor to his attorney at the sugges-tion of the latter with mutual intent to defraud the client's creditors, vests the legal estate as between the parties to the deed, and entitles the grantee to maintain an action for the land against his grantor in possession.

(*Pinkston* v. *Brown*, 3 Jones Eq., 494; *Vick* v. *Flowers*, 1 Mur., 321; *Jackson* v. *Marshall*, Ibid., 323; *Ellington* v. *Currie*, 5 Ire. Eq., 21.

CIVIL ACTION to recover Land tried at Fall Term, 1878, of CHATHAM Superior Court, before *Kerr, J.*

The case states: The plaintiff alleged that he was the owner of the land in dispute, and claimed title under a deed executed by defendant to him on the 25th of December, 1868.   The defendant admitted the execution of the deed, but insisted that it was only a contract to convey, and if absolute on its face, it was intended to be a mortgage to secure a fee he owed to plaintiff as his attorney in bank-ruptcy, upon payment of which the plaintiff was to recon-vey the land.   It was admitted that defendant had remained

in possession of the premises since the execution of the deed to the present time.

The plaintiff read his deed in evidence, and the court held it to be a conveyance in fee simple upon its face. The annual value of the land was then proved, and plaintiff rested his case.

The defendant was examined as a witness in his own behalf and testified that being greatly in debt in 1868, he consulted the plaintiff as an attorney, informed him of his financial condition, and asked his advice; that plaintiff advised him to go into bankruptcy and offered to procure his discharge for $100—half as a fee, and the other half to pay the costs; that the defendant replied he had no money, and thereupon plaintiff said the defendant could convey land to him to secure said sum; defendant asked if that would be right, and plaintiff replied that the bankrupt act expressly provided for such cases; defendant assented to this arrangement, and on the next day he and the plaintiff and one.Wesley Goodwin went to Raleigh, when he executed said deed upon the express agreement with plaintiff that upon payment of the $100, plaintiff would reconvey the land to him, and he thought the deed was so drawn.

The defendant further testified that plaintiff then filed the petition in bankruptcy as his attorney, and he paid him $47 at the time, and shortly after paid him the further sum of $20.56, and in 1871 tendered him the balance of said sum of $100; that the plaintiff then for the first time refused to accept the tender, and claimed the land as his, though he had never demanded rent from defendant; that the land at the time of said conveyance was worth about $800. Defendant put in evidence a deed of composition, executed after the deed to plaintiff, between his creditors and himself to suppress proceedings in bankruptcy, and stated his creditors were satisfied therewith. It also appeared from defendant's testimony and his schedule that his reversionary

interest in a hundred acre tract, conveyed in last mentioned deed, was never surrendered in bankruptcy.

The defendant then read in evidence the deposition of Wesley Goodwin, the subscribing witness to the deed of December, 1868, who stated that it was executed at the suggestion of plaintiff to secure the $100 for which the discharge in bankruptcy was to be obtained, and upon the express understanding that plaintiff would reconvey the land on payment of the money,—the plaintiff further telling defendant that he had more land than he could carry through bankruptcy, and by this arrangement he might secure a home after he got through. Defendant here closed his case, and the plaintiff offered no further testimony.

Issues submittted to the jury:—

1. Is the plaintiff the owner in fee of the land in dispute? Answer—Yes.

2. What is the yearly rental of the land? Answer—Forty dollars.

3. Was the conveyance from defendant to plaintiff executed and delivered as a mortgage? Answer—We find that it is subject to such construction and to a parol trust in favor of defendant.

4. If executed as a mortgage, has the mortgage debt been paid or tendered? Answer—We find it has been paid in part and remainder tendered.

5. Was R. W. York at the time of making said conveyance attorney for defendant? Answer—He was, but had no intention at the time of imposing or using undue influence upon defendant.

6. What was the value of the land at the time it was conveyed? Answer—Eight or ten hundred dollars.

7. Did plaintiff agree with defendant that he would hold the land under the deed of the 25th of December, 1868, until defendant obtained his discharge in bankruptcy, and then, upon the payment by defendant of plaintiff's fee of

one hundred dollars, he would reconvey to defendant, and was this transaction between the parties with intent to defraud the defendant's creditors? Answer—We find, after taking all the circumstances under consideration, that it was a fraud upon creditors, and we are unwilling to put any other construction upon it. Therefore we find in favor of plaintiff.

Special instructions asked by defendant:—

1. That if the jury shall find that plaintiff and defendant sustained the relation of attorney and client at the delivery of the deed in 1868, and that the deed was procured by the suggestion and imposition of plaintiff, then the parties do not stand *in pari delicto* and plaintiff cannot recover, and the first issue should be found in the negative.

2. If the jury shall find that the deed of 1868 was intended as a mortgage, in response to the third issue, and that the sum of one hundred dollars has been paid, then the plaintiff cannot recover.

His Honor refused the instructions as prayed for, and the jury responded to the issues as above. Judgment for plaintiff. Appeal by defendant. See same case, 77 N. C., 213.

*Messrs. J. H. Headen* and *J. B. Batchelor*, for plaintiff.
*Messrs. John Manning* and *Jno. M. Moring*, for defendant.

ASHE, J. There were several issues submitted to the jury, the first and third of which were those only upon which instructions were asked. The first, "Is the plaintiff the owner of the land in fee simple?" and the third, "Was the conveyance from defendant to plaintiff executed and delivered as a mortgage?"

The defendant asked His Honor to charge the jury in the first instruction as prayed for, "that if the jury shall find that plaintiff and defendant sustained the relation of attorney and client at the delivery of the deed in 1868, and that

the deed was procured by the suggestion and imposition of plaintiff, the parties do not stand *in pari delicto* and plaintiff cannot recover, and the first issue should be found in the negative." And upon the third issue the instruction prayed for was "that if the jury should find that the deed of 1868 was intended as a mortgage, and that the sum of one hundred dollars has been paid, the plaintiff cannot recover."

His Honor very properly declined to give the instructions. He could not give that asked in the first, because the deed made by the defendant to the plaintiff did vest the legal title to the land in the plaintiff in fee simple. Nor in the view we take of the case could he have given the second instruction, for if the intent of the parties in making the deed of December, 1868, was to defraud the creditors of the defendant, it would make no difference whether the deed was intended as a mortgage or an absolute conveyance. The plaintiff has the legal title and has the right to recover in this action, unless the defendant can set up a sufficient defence at law or in equity to debar his recovery.

The defendant insists that plaintiff ought not to recover because he was his attorney and advised him to go into bankruptcy and offered to advance the money to defray the expenses for him, if he would give him a mortgage on his land ; that he did give him a deed for the land in controversy to secure to the plaintiff the sum of one hundred dollars ; that plaintiff imposed on him and wrote a deed conveying the property absolutely to him, when it was only to have been a mortgage to secure the $100. And Goodwin, the subscribing witness to the deed, stated in his deposition that the deed was executed at the suggestion of plaintiff to secure him in the advancement he agreed to make for him in obtaining his discharge in bankruptcy, and that upon the payment of the $100 he would reconvey the land to him, telling the defendant at the same time "that he had more land than he could carry through bankruptcy, and

by that arrangement he might have a home when he got through."

We think it is evident from the testimony of the witness, Goodwin, and of the defendant himself, that the defendant knew what he was about, and that it was a plan entered into by both parties and understood by them to cheat and defraud the creditors of the defendant. Whether the plaintiff at the time of receiving the deed contemplated taking advantage of the form of the deed, it is needless to inquire. He may not have formed the purpose of defrauding the defendant until some time after its execution. But he suggested the fraud to defendant, and they conspired together to cheat and defraud his creditors. They are *in pari delicto*, and this court in the exercise of its equitable jurisdiction cannot interfere to give relief. *Pinkston* v. *Brown*, 3 Jones Eq., 494; *Vick* v. *Flowers*, 1 Mur., 321; *Ibid.*, 323; *Ellington* v. *Currie*, 5 Ire. Eq., 21.

We regret that we feel constrained to announce this decision, but we have to administer the law as we find it; and while we decide this case in behalf of the plaintiff, we cannot refrain from expressing our most unqualified condemnation of the part he has acted in this dishonorable transaction. We feel compelled to say that there is no error in the ruling of the court below. Let this be certified, &c.

No error.                          Affirmed.