JAMES T. RESPASS v. JOHN G. JONES.

*Deed—Execution—Registration—Cancellation and Re-execution*
*—Fraud—Trust.*

1. Registration is necessary to perfect the title intended to be conveyed by deeds.

2. After the delivery of a deed, as between the vendor and vendee, the contract is executed; and if it should be lost or destroyed before registration without any fraudulent purpose, the courts will enforce, it either by decreeing a re-execution and a registration of a copy, or declaring the vendor a trustee of the legal title, and directing him to make a conveyance.

3. Before registration the deed may be surrendered, cancelled or changed in any way that may be agreed upon between the parties thereto, so far as it affects them.

4. Where the vendee, before registration, erased his name and inserted that of his wife, with the purpose of putting the title beyond the reach of his creditors, but this was not known to the vendor until after the registration, when he assented: *Held*, that no title passed thereby, and the courts would not lend their aid to correct the instrument by restoring it to its original form.

5. Where the purchaser of lands, having himself paid the consideration, procured the deed to be made to a third party for the purpose of defeating the demands of his creditors, or other persons who may have rights therein, the Court will not aid him by declaring and enforcing a resulting trust in the grantee for his benefit.

CIVIL ACTION, for the recovery of land, tried before *Montgomery, J.,* at February Term, 1888, of the Superior Court of BEAUFORT County.

The plaintiff claims title to two-thirds of the land in controversy by virtue of two deeds—one from Alice Jordan, dated September 5, 1883, and the other from Emma Beacham, dated August 3, 1883, conveying their respective interests in said land.

The defendant claims title:

First, under a deed executed to him on the 21st day of March, 1867, and which was afterwards changed by erasing

the name of the defendant wherever it occurred and substituting that of his wife, Ann M. Jones, and which change, he says, was made " ignorantly, without any design or intent of defeating said deed, or of injuring any one," and he asks that the deed " be restored to its original form as a deed to the defendant." This deed was registered November 26, 1878.

Second, in an amended answer, he claims title by virtue of a deed executed by W. O. Respass, conveying the land in question to his daughters Laura, Alice and Emma, the consideration for which was the land conveyed by him to said Respass; and he insists that this deed to Laura, Alice and Emma was never delivered to them, but was intended " to place the title in said land in the said children to hold in trust for himself," and he asks that the plaintiff " be decreed to convey to him all such interest as plaintiff may have acquired from said Alice and Emma Jones." This deed was registered February 25, 1882.

By agreement, a jury trial was waived and the facts were found by the Court.

The following is so much of the case on appeal as is necessary for a proper understanding of the questions presented for our adjudication:

On the 21st day of March, 1867, W. O. Respass was the owner of the land in dispute, and the defendant Jones was the owner of a tract of land in Beaufort County. It was at the time agreed between W. O. Respass and the defendant to exchange land, and in pursuance of the agreement the defendant executed a deed to said Respass, and the said Respass executed a deed to the defendant Jones. The defendant Jones afterwards altered the deed made to him by erasing his own name wherever it appeared and inserting that of A. M. Jones, his wife, and, in this altered form, the deed was proved and registered. Ann M. Jones, the wife of the defendant, died intestate in 1880, leaving as her heirs-

at-law Jas. T. Respass, Josiah Respass, Jas. J. Respass and Martha E. Respass by her first husband, and Henry J. B. Adams and J. F. Adams by a second husband, and Alice, Laura and Emma Jones by her last husband.

The defendant owned no other land in 1867 or since, and but little property besides.

The plaintiffs offered in evidence:

First, a deed from W. O. Respass, conveying the land in question to Emma, Alice and Laura Jones, children of the defendant. This deed was dated March 21, 1867, but was in fact executed about 1875, and was delivered to the defendant and acknowledged by the grantor and registered February 25, 1882.

Second, a deed from Alice (who had intermarried with one Jordan) to the plaintiff, dated September 5, 1883, conveying to him her interest in the land in dispute.

Third, a deed from Emma (who had intermarried with one Beacham) to the plaintiff, dated August 3d, 1883, conveying to him her interest in said land.

Fourth, a deed from Laura (who had intermarried with one Topping) to the defendant Jones, conveying to him her interest in said land.

The defendant offered in evidence a note from plaintiff to Emma Beacham for the payment of $100, for the purchase of the land mentioned in the deed of August 3, 1883, with an endorsement in the handwriting of J. T. Respass as follows: "The within note is to be paid, provided a good title is perfected for the same land, otherwise this note is to be returned to J. T. Respass, and is not to be collected."

There was no evidence other than that contained in the defendant's examination (presently referred to) that he owed any debts in 1867. There was no evidence of an actual delivery of the deed from W. O. Respass to Laura, Alice and Emma Jones, or that it was ever in their possession.

The defendant offered in evidence his own examination, taken by the Clerk, under an order in the cause, in which

he testified, so far as is material, that the two deeds—one made to the defendant and altered by substituting the name of his wife for his own, and the other to Alice, Laura and Emma Jones, both dated March 21, 1867—conveyed the same land ; that the latter was executed and delivered six or eight years after the former ; that it was delivered to the defendant and not to his children, and that he had it proved and registered.

In answer to the question, "If both of the deeds from W. O. Respass, dated March 21, 1867, convey the same land, what reason or motive had you for procuring the execution and delivery of the last deed ? " he said : "As the land which I gave W. O. Respass in exchange for this land was in my own name, and the deed from W. O. Respass had been made to me and changed to my wife, and I believing that a transfer from me to her without a valuable consideration might be attacked by some old creditor, I had a deed made from W. O. Respass to my children."

In answer to the question, " Was it your intention, in having the latter deed executed to your own children, to preclude the children by former marriages?" he said : " It was."

He also testified that the alterations in the deed made to him, by erasing his own name and inserting that of his wife, was to "put it (the land) out of the reach of my (his) creditors." The altered deed was not seen by W. O. Respass till after it was registered, and it was altered, proved and registered without his knowledge, but after the registration he assented to it, and said "it made no difference to him how many times it had been changed." This was after the registration of the deed to the children. The consideration of the deed to Ann M. Jones was the exchange of the land with W. O. Respass, and the children had no interest in that land.

The defendant further testified, in answer to questions in regard to the execution of the deed to his children: "I thought the title would be in W. O. Respass, supposing the deed to Ann M. Jones had been destroyed or never appeared; at the time the second deed was executed I had not made up my mind which one to place of record." That he had no intention of destroying the first deed, and in answer to the question why he had both deeds recorded, said that after having the deed to his wife registered, J. T Respass claimed that he "had an interest in the land, as an heir to his mother" (wife of defendant), and he concluded to record, and did have recorded, the second deed. In answer to the question, "Why, after having the same placed of record, do you propose to avoid the second deed?" he said: "It is my intention to avoid both deeds and procure a fee-simple title for the land. * * * * I did not intend to destroy either of said deeds; the one not placed of record I would have placed about the house."

Questions, in the progress of the examination of the defendant Jones, were asked and objected to, but no exceptions were taken and no point in relation thereto made in this Court.

The defendant requested the Judge to find as a fact, whether or not, when Jones procured the deed from W. O. Respass to his children, to be registered and executed, he (Jones) intended an advancement to his children to take effect at once, or whether he intended the title to be in the children in fee, in trust for himself during his life and then to themselves.

The Judge was of opinion that the effect of the conveyance was a matter of law, and declined to do so. Defendant excepted.

Defendant then offered to show evidence of intention. Court refused to hear the same. Defendant excepted.

Upon the testimony the Court found the following facts:

1. That the deed from W. O. Respass to John G. Jones was altered by defendant Jones with intent to put the title to the land in controversy out of reach of his creditors.

2. That W. O. Respass did not assent to or ratify the alteration of the deed to Jones before the registration thereof.

3. That Jones procured the execution of the deed from W. O. Respass to Laura, Alice and Emma Jones (defendant's children) and himself, and had the deed proved and registered. That the children paid nothing of value therefor, and the consideration was paid by Jones.

4. That the defendant Jones was in possession of the land in controversy at the time he took deeds from Alice and Emma, and at the time of the execution of the deed from Laura Jones to defendant.

Upon the facts so found and admitted the Court was of opinion that plaintiff was entitled to recover, and gave judgment as set out in the record, from which the defendant appealed.

*Messrs. J. B. Batchelor* and *Jno. Devereux, Jr.,* for the plaintiff.

*Mr. W. B. Rodman, Jr.,* for the defendant.

DAVIS, J. (after stating the case as above). In addition to the fact that the defendant Jones was in possession of the land when the deeds from Alice and Emma to the plaintiff were executed, which fixed him with notice of any equity which the defendant might have, it appears from the endorsement on the note for $100, given by him to Emma, that he had actual knowledge of an adverse claim to the land, and that even the sum of $100, which appears to have been much less than the value of the land, was not to be paid if he failed to get a good title, and if his claim rested solely upon its merits he would, perhaps, not be entitled to recover; yet, if the legal title is in him, the defendant, if

guilty of any fraud, cannot recover, upon the well settled principle, that the Courts will not give aid in such cases, and the legal title must prevail.   We can hardly conceive of a more forcible illustration of the unyielding nature of this rule, than is to be found in the decision which the Court felt " compelled " to make in *York* v. *Merritt,* 80 N. C., 285.

Conceding it to be settled in this State that a recovery of land may be had upon an equitable title (*Condry* v. *Cheshire,* 88 N. C., 375) let us ascertain, first, whether the legal title is in the plaintiff; and if so, second, whether the defendant, who is asking the equitable assistance of the Court, has so soiled his own hands that equity will not touch them, to aid.

In determining the first question, we are to consider the effect of the deed from W. O. Respass to the defendant, and of its alteration, for if, as altered and registered, it passed a good title to Ann M. Jones, the defendant would, at least, be entitled as tenant by the curtesy to hold during his life, and the plaintiff could not in the present action recover the interest acquired from his vendors, as two of the heirs-at-law of the said Ann M. Jones.

After the execution and delivery of a deed the estate passes out of the grantor and vests in the grantee, to be legally perfected by registration.   If, before registration, the deed is lost or destroyed, such loss or destruction does not restore the estate to the grantor.   *Dugger* v. *McKesson,* 100 N. C., 1.

As between the grantor and grantee the contract has been executed, and if the loss or destruction has been the result of accident, or without any fraudulent or illegal act or intent on the part of the grantee, the Court will aid in perfecting his title by one of two modes, as was said in *Triplett* v. *Witherspoon,* 74 N. C., 475: either by setting up the lost deed and registering a copy, or by declaring the grantor a trustee and compelling a conveyance of the legal title; but the legal title is not perfected till registration, though when registered it

relates back to the date of its execution. *McMillan* v. *Edwards*, 75 N. C., 81; *Morris* v *Ford*, 2 Dev. Eq., 412; *Walker* v. *Coltraine*, 6 Ired. Eq., 79; *Phifer* v. *Barnhart*, 88 N. C., 333.

We take it as settled that while, by execution and delivery of the deed, the vendor parts with all power and control over the land conveyed, yet before probate and registration and before any intervening rights, legal or equitable, have accrued, as between the grantor and grantee, the deed may be surrendered to the grantor or cancelled or changed in any way that may be agreed upon by them. *Davis* v. *Inscoe*, 84 N. C., 396, and cases there cited.

This being so, the deed from W. O. Respass to the defendant, though passing an inchoate title which was never perfected by registration, and which, by reason of the alterations made by the defendant, could not be registered in the form as executed and delivered, never became operative, and when, at the instance of the defendant, and by his request, the deed was executed by W. O. Respass to Alice, Emma and Laura Jones, and proved and registered, it passed a perfect legal title. *Hare* v. *Jernigan*, 76 N. C., 471, and cases cited.

The deed first executed to the defendant having been altered by him, as found by the Court, for the purpose of putting the land beyond the reach of his creditors, he could not now invoke the equitable aid of the Court to have it restored to its original form and registered *Davis* v. *Davis*, 6 Ired. Eq., 418; *York* v. *Merritt, supra.*

The counsel for the defendant, in his well considered and elaborate brief, contends " that the alteration by Jones was neither in fact, nor in the view of the law, fraudulent; that it was essentially, and in equity must be regarded as, an accident, and must be relieved against, as any other accident would be, according to admitted principles of courts of equity."

He insists, in support of this view, that " it is in evidence that in fact he (the defendant) owed nothing," and that it is

not made to appear that there were any creditors to be defrauded. So far from its appearing from any evidence that the defendant owed nothing, it clearly appears from his own evidence that he had the deed altered to put the land beyond the reach of his creditors, and his own statement sustains the finding of the Court. He further insists that the deed could not be fraudulent as to creditors, because " the land was worth only the value of a homestead, and the defendant had a right to convey his homestead even against his creditors."

It does not appear when the alteration in the deed was made; but it was executed March 21, 1867, anterior to the homestead, and if the alteration was made with a fraudulent intent, he cannot get relief against the legal consequences of his own act. Having for a fraudulent purpose lost the legal title, the Court will not aid in its restoration, and the authorities cited do not apply.

But it is insisted, that when the purchase money for a tract of land is paid by one, and a deed therefor is taken in the name of another, a resulting trust arises in favor of him who paid the purchase money, and, therefore, if the Court will not decree a restoration of the deed made to the defendant, as it was before the alteration, yet, inasmuch as the consideration for the land was paid by the defendant, he should be allowed to show that the land was conveyed to his children, not as an advancement, but to be held in trust for him. The general rule is as insisted upon by counsel for the defendant, but his misfortune is that the fraudulent device by which he lost the legal title pervades his whole case. Having rendered the original deed to himself inoperative by erasing his own name and inserting that of his wife, with a purpose to put the property "out of the reach of his creditors," he afterwards procures a deed to be made to his own children, as he himself testifies, for the purpose of precluding the other children of his wife by former marriages from participating as heirs-at-law in the inheritance from her; and

the arguments in the able and learned brief of counsel are rendered nugatory by the fatal facts which come from the defendant himself.

Affirmed.