The feme plaintiff sued to recover a tract of land, and her husband was joined with her pro forma, there being no allegation in the complaint of his title or right of possession. The sole allegation was that the wife owned the land and was entitled to the possession thereof, and the prayer was that she be declared to be the owner and that she recover the possession. It is presumed, of course, that the case was tried upon the only issue raised by the pleadings, the issue upon which it actually was tried not being set out in the record. It was admitted that Stepheness Chambless owned the land, and that he died leaving a will by which he devised it in the following terms: "I will and bequeath unto Nancy Richardson the use and benefit and profit of all my estate, real, personal and mixed, of every species and description whatever, during her natural life, and to the lawful heirs of her body after her death." Nancy was his granddaughter. She died about six years ago, leaving her surviving three children, John, Hannah and Sarah. Hannah conveyed the land to J. W. Perry, one of the plaintiffs, by deed dated 7 Aug., 1878, and sufficient in form to pass the entire estate in the premises. This deed was acknowledged by the grantor, and afterwards the name of J. W. Perry, the original grantee, was stricken out and that of his wife, M. E. Perry, inserted without the consent or knowledge of the grantor, and, in this form, it was registered. There was testimony as to the possession of the property, which need not be stated, as in the view taken of the case it has become immaterial. There was evidence that Nancy Richardson conveyed the land to Elizabeth Hackney, mother of the defendant. The plaintiff introduced the will of Stepheness Chambless and the deed of Hannah J. Richardson in evidence.
The Court held that the deed did not convey any title to the feme plaintiff and, on motion, dismissed the action, under (370) the statute. The plaintiff excepted and appealed.
The first question raised is the sufficiency of the deed of Hannah Jane Richardson to pass title to the feme plaintiff. The deed was originally made to John W. Perry, his name was erased and that of his wife inserted in its place, and, as thus altered, it was registered. The deed, therefore, which was made to John W. Perry, has never been registered, and the deed which was registered was not the one made by Hannah Jane Richardson. A deed presupposes contract, and, indeed, is itself an executed contract, passing *Page 301 
the equitable title after delivery and before registration, the latter taking the place of the livery of seizin to the grantee, and after registration the seizin or legal estate also passes. Davis v. Inscoe,84 N.C. 396; Hare v. Jernigan, 76 N.C. 471;Respass v. Jones, 192 N.C. 5. The deed before registration may be redelivered or surrendered, as the cases we have already cited show, and a deed made by the grantor to a new grantee, at the request of the first grantee, if there is no fraud or other vice in the transaction. But that is not our case. A contract requires the assent of two minds to one and the same thing, and so, as to a deed, says Blackstone, for it is essential to its validity that there should be parties able and willing to contract and be contracted with for the purposes intended by the deed and a thing or subject-matter to be contracted for, all of which must be expressed by the parties in their deed. It therefore follows that there must be a grantor, a grantee and a thing granted, and in every lease, a lessor, a lessee and a thing demised. 2 Blk., 295-7. Consent, which is the vital element of every contract, is wanting here. Hannah J. Richardson never agreed to be bound by a conveyance to the person whose name was inserted in the deed after its execution by her. She (371) had an undoubted right to determine, by the exercise of her contractual right of selection, to whom she would convey the land. There is another reason why the deed to the feme is not good. A deed must always be consummated by delivery, which is the final act of execution, and this delivery must be either actually or constructively made by the grantor to the grantee. There has been no delivery by the grantor to Mrs. Perry. The only contract so far as she is concerned, if there was any at all, was between her husband and herself, and the only delivery by him to her, and that even was not the delivery of a deed, in the sense of the law, but of a paper-writing having no legal efficacy as an instrument passing title. We, therefore, hold that the deed to J. W. Perry, when altered by the insertion of his wife's name, was not binding on the grantor, and did not transfer any title to her. Jones v. Respass, supra; Hollis v. Harris, 96 Ala. 288;Hill v. Nesbit, 58 Ga. 586. The deed was afterwards restored to its original form by the reinsertion of the name of J. W. Perry. It may be that he could have recovered on his equitable title, if this was his suit, and he had properly pleaded and relied on his title. Murray v. Blackledge,71 N.C. 492; Condry v. Cheshire, 88 N.C. 375; Farmer v. Daniel, 82 N.C. 152. But it is in fact his wife's suit, to which he is made a party onlypro forma, and there is no allegation in the complaint to which proof of his equitable interest can apply. It is familiar learning that there must be allegation *Page 302 
as well as proof, and they must correspond. There was no request for an amendment, if one could have been allowed under the circumstances, which we do not decide.
This disposes of the appeal and affirms the judgment, but the counsel have asked us to pass upon the other question as to the construction of the will of Stepheness Chambless, in order to prevent further (372) litigation. As we have a decided opinion upon that matter, we will do so, for it may enable the parties to adjust their differences.
The appellant contends that only a life-estate was given to Nancy Richardson by the will, as the land was not devised, but merely its "use, benefit and profit," and for this reason the Rule in Shelley's case does not apply. We think the words are sufficient to pass the estate in the land and that the Rule does apply. The words "all my rents" were held sufficient to pass real estate; for it was said to be according to the common phrase, and usual manner of some men, who name their lands by their rents. 2 Gr. Cruise (2 Ed.), p. 229 (7 Cruise 176). So a devise of the "rents, issues and income" of lands was held to pass the land itself. Anderson v. Greble, 1 Ashmead, 136. A person having let several houses and lands for years, rendering several rents, devised as follows: "As concerning the disposition of all my lands and tenaments, I bequeath the rents of D to my wife for life, remainder over in tail." The question being whether, by this devise, the reversions passed with the rents of the lands, it was resolved that they did, as that was clearly the intention, and the will should be construed according to the intent to be gathered from its words. Kerry v.Derrick, Crokes Jac., 104; Allan v. Blackhouse, 2 Ves. B., 74. A devise of the income of land was held to be in effect a devise of the land, Reedv. Reed, 9 Mass. 372; so a devise of the "rents, profits and residue" of the testator's estate received a like construction. Den v. Drew,14 N.J.L. 68. In Parker v. Plummer, Cro. Eliz., 190, a devise in the following words: "I will that my wife shall have half the issues and profits of the land during her life," the question being whether she had any interest in the premises or was only entitled to have an account of rents. It was determined that she had an estate, "for to have the issues and profits and the land were all one," and the same was held with respect to a devise of a "moiety of the rents, issues and profits of my estate," the words (373) beings equivalent to a devise of the estate in fee. Stewart v. Garnett, 3 Sim., 398. See, also,Beekman v. Hudson, 20 Wend., 53; Cook v. Gerrard, 1 Saund., 186c;Whittome v. Lamb, 12 M. W., 813; Mannox v. Greener, L. R., 14 Eq., 456. The language of this will is much stronger to show an intention to devise the land *Page 303 
itself than was that used in any of the cases cited. It appears that he gave to the heirs of her body precisely the same interest that he gave to the life-tenant. If he intended that they should have the corpus, why should not the mother also have it, by the same construction of his words? The law searches for the intention of the testator and executes it when discovered, without any special regard to the particular manner of expressing it, testators generally being inops consilii. In this case, there is no reference to the corpus, either in the first or second limitation, but each, as to the subject of the devise, is couched in the same terms. No trustee is appointed to hold the legal title, and it cannot be supposed that the testator intended the legal title to remain in his heirs forever for the "use, benefit and profit" of those named in the will. Those words are appropriate in law, as the authorities show, to create a beneficial interest in the land, and show clearly an intention to do so. There is no apparent reason for keeping the legal and beneficial interest apart, and we must presume that they were intended to go together to the object of the testator's bounty. But if the testator ever withheld the legal estate and it descended to his heirs, he used words fit, and sufficient in law, to raise a use in favor of his granddaughter, Nancy Richardson. Why did not the statute execute the use by drawing the legal title to it and thus unite the two estates, so as to form what is called in Fleta the only perfect title (Fit juris et seisinae conjunctio)? 2 Blk., 311.
Not only does the very language of the will, when considered in its ordinary sense, clearly indicate a purpose to give both the legal and beneficial interest to the devisee, but the inference thus drawn (374) from it is in accordance with the interpretation of the law. "In the construction of wills, adjudged cases may very properly be argued from, if they establish general rules of construction, to find out the intention of the testator, which intention ought to prevail if agreeable to the rules of law? Goodlittle v. Whitby, 1 Burrows, 233. We think those rules, as well as the proper understanding of the words used, justify our construction of the will. The law carries into effect the intention of the testator, if sufficiently expressed, however defective the language may be. This is one of the rules of construction. The case of Floyd v. Thompson,20 N.C. 616, seems to be directly in point, as the language is substantially identical with that of the devise in question. There the property was limited to the use and benefit "of the legatees for life, and then to `descend' to the heirs of their body," and the words were held to denote that the heirs took in succession from and not merely after the first taker. Ruffin, C. J., added: "If the subject *Page 304 
here had been land, the daughter, first taker, would undoubtedly have the fee, and we think less than the entire property in the slaves will not satisfy the words." To the same effect are Donnell v. Mateer, 40 N.C. 7;Worrell v. Vinson, 50 N.C. 91; King v. Utley, 85 N.C. 59; Ham v. Ham,21 N.C. 598. In the case last cited the subject is fully discussed and the authorities collated by Daniel, J. The conclusion is, therefore, irresistible, that the testator used the words "use, benefit and profit" as synonymous with the land itself. 3 Gr. Cruise, p. 229; 2 Underhill on Wills, sec. 692.
Having settled this point, it is not difficult to decide that the Rule in Shelley's case applies to the limitation. It is within the very words of the Rule, for where the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately to his heirs, in fee or in (375) tail, always, in such case "the heirs" are words of limitations of the estate, and not words of purchase; and superadded words of limitation, not varying the course of descent, do not prevent the application of the rule. Shelley's case, 1 Coke, 104. The rule applies only where the same persons will take the same estate, whether they take by descent or purchase, in which case they are considered to take by descent.Ward v. Jones, 40 N.C. 400; Howell v. Knight, 100 N.C. 257. They who take in remainder, must take in the quality of heirs according to the course of descent established by law. The rule is one of law, and not merely one of construction for the purpose of ascertaining the intention and when the words of the limitation bring the case within the rule, it applies, regardless of the intent, or, if expressed differently, the intention is presumed to be in accordance with that which the law implies from the use of words having a fixed and definite meaning. Leathers v.Gray, 101 N.C. 162; Wool v. Fleetwood, 136 N.C. 460; Tyson v. Sinclair,138 N.C. 23; Pitchford v. Limer, 139 N.C. 13. Under the devise in this will the limitation over carries the estate to the same parties, whether they take by descent or by purchase, and the words "heirs of the body" are therefore words of limitation, and not words of purchase, as those so designated are presumed to take by descent in the quality of heirs. May v.Lewis, 132 N.C. 115; Mills v. Thorne, 95 N.C. 362. It follows that Nancy Richardson acquired a fee-simple under the devise. If she conveyed to Mrs. Hackney, her daughter, Hannah J. Richardson, got nothing by descent, and her deed to J. W. Perry consequently passed nothing to him. She had nothing to grant. But if she had not parted with her title and died intestate, her three children took from her by descent, as tenants in common. We do not *Page 305 
know what are the facts, as they were not found, the case having been taken from the jury.
No Error.
Cited: Webb v. Borden, 145 N.C. 202; Lumber Co. v. Lumber Co.,153 N.C. 51; Wicker v. Jones, 159 N.C. 111; Lummus v. Davidson,160 N.C. 486.
(376)