This was originally a processioning proceeding, and it appearing that title to the land was in controversy, it was transferred to the civil-issue docket by consent of all parties, and pleadings were filed.
The plaintiff complained for the possession of certain lands alleged to be in possession of defendants, and for a judgment clearing the title of certain other parts of the same tract alleged to be in plaintiff's possession.
The defendants admitted possession of a portion of the land described in the complaint, which part was described by metes and bounds in the answer, and claimed title thereto.
Nearly all the land in controversy was on the west side of Juniper Branch, and the remainder on the east side.
The plaintiff offered evidence that Elisha Wicker, his father, was dead, and introduced the following deeds: *Page 85 
Deed from Daniel McGilvary to A. H. McLeod, dated 19 October, 1867, registered in office of Register of Deeds of Moore County, in Book 82, page 558, on 5 November, 1867.
Deed of Alexander H. McLeod and wife to Elisha Wicker, dated 16 September, 1874, registered in the office of the Register of Deeds of Lee County, in Book No. _____, page ______, 19 July, 1911.
The plaintiff also offered evidence tending to prove that the deeds covered the lands in controversy, and other land, and that he and those under whom he claimed had been in possession of the same for more than thirty years; but he admitted that his home was on the land in the deeds outside of the dispute, and that he had not cultivated continuously the land in controversy.
The defendant introduced the following deeds, which were admitted without objection: (105)
Deed of Daniel Hall and wife, Mary Hall, to Mary J. Jones, dated 15 April, 1879, registered in Moore County, 30 September, 1885, in Book No. 56, page 361.
The courthouse was burned in that county and the deed was reregistered 18 January, 1908, in Book No. 40, page 50.
Deed from Daniel Hall and wife to Mary J. Jones, dated 29 April, 1882, registered in the office of the Register of Deeds in Moore County, 29 September, 1885, Book No. 56, page 359, and reregistered in Moore County on 5 September, 1898, in Book No. 18, page 470.
Deed of W. C. Edwards to Daniel Hall, dated 2 April, 1876, registered in Lee County, 19 June, 1911, in Book of Deeds No. 5, page 118.
Deed of J. W. Burns to Daniel Hall, dated 31 December, 1878, registered in the office of Register of Deeds of Lee County, 16 March, 1909, Book of Deeds No. 1, page 292.
There were erasures and interlineations, in material part, on the first and second of these deeds, and the plaintiff introduced evidence tending to prove that the erasures and interlineations were not in the same handwriting as the body of the deed, that different ink was used, and that they were not made at the date of the deed, but afterwards.
The defendant also introduced evidence tending to prove that said deeds covered the lands in controversy, and that she had been in possession thereof for thirty years, and had, during that time, cultivated continuously five or six acres of the land.
The home of the defendant was not in dispute.
John B. Cameron, a surveyor, was asked the following question:
Q. Examine that plat and see if you can locate this description (attorney reading deed of Daniel Hall and wife to Mary J. Jones, dated 15 April, 1876); also this tract (Daniel Hall and wife to Mary J. Jones, dated 29 April, 1882). State whether or not, as a surveyor, you can say *Page 86 
whether or not this land on the west side of Juniper Branch, within that line running from 5 to "B," "B" to "C," and from "C" to Juniper (106) Branch, and Juniper Branch to the beginning, is contained in that description? (Objection by plaintiff. Overruled. Exception.) A. According to your papers, it does. I didn't survey that. I platted it.
This witness afterwards testified, without objection, that the deeds of the defendant covered the land in controversy.
Defendant introduced certified copies of the plat of division of the lands of Elisha Wicker, father of the plaintiff.
Objection by plaintiff. Overruled. Plaintiff excepted.
Also certified copy of mortgage of L. A. Wicker to Elisha Watson, dated 20 March, 1891.
Objection by plaintiff. Overruled. Plaintiff excepted.
The western line of the land in the division and of the land in the mortgage is Juniper Branch. The plaintiff testified that all the land he owned was not embraced in the mortgage.
The only part of his Honor's charge excepted to is as follows: "Now, in respect to the two deeds put in evidence by the defendants, and purporting to be made to Mary J. Jones — one dated 15 April, 1879, and the other dated 29 April, 1882 — the plaintiff contends that, according to the evidence on the face of the deeds, there has been, since the excution and delivery of the deeds, a change in the grantee, and that the name of Mary J. Jones has been by such change made the grantee in such deed. Now, the burden of showing this, and that such change was made by the grantee or some one in her interest, or the interest of the defendants, or that it was not made by the grantor or by his consent, is upon the plaintiff."
The following verdict was returned by the jury:
1. Is the plaintiff the owner of and entitled to the possession of the lands included in the following lines: C to D to 3 to 4 to 5 to B and to C, or any part thereof? Answer: No.
The court rendered the following judgment:
This cause coming on to be heard, and being heard before his Honor, C. M. Cooke, judge, and a jury, and the following issues having been submitted to the jury:
1. Is the plaintiff the owner of and entitled to the possession (107) of the lands included in the following lines: C to D to 3 to 4 to 5 to B and to C, or any part thereof?
2. And if a part, what part?
3. Are the defendants in the wrongful possession of said lands?
4. What damage, if any, is the plaintiff entitled to recover against the defendants? *Page 87 
And the jury having answered the first issue "No," it is therefore considered, ordered, and adjudged, that the plaintiff is not the owner nor entitled to the possession of the lands within the following lines, C to D to 3 to 4 to 5 to B and to C, as shown on the map on file in this cause, but that the defendants are the owners and entitled to the possession of said lands.
It is further adjudged that the defendant recover of the plaintiff and D. D. Buie, surety on the prosecution bond filed in this cause, their costs, to be taxed by the clerk of the court.
The plaintiff excepted and appealed.
When we speak of an alteration in a writing, we refer to the legal acceptation of the term, which implies a change made after its execution, and while an erasure or interlineation may be alteration, it is not such if made before the final execution of the writing.
Under the rule of the ancient common law, as illustrated in its earliest decisions, it was held that any alteration, however insignificant, rendered the writing void, and that the judge must pass on the whole question (Pigot's case, 11 Rep., 26b), but this was modified even in the time ofLord Coke, to the extent that the alteration must be material, and that the question as to the time when made should be submitted to a jury.
In Co. Litt., 225b, it is said that "Of ancient time, if the deed appeared to be rased or interlined in places material, the judges adjudged upon their view the deed to be void; but of the latter time the judges have left that to the jurors to try whether the rasing or (108) interlining were before the delivery."
Modern authority in England and in the United States has further modified the doctrine until it is now generally agreed that when an alteration is established it avoids the instrument, if it is material; that the materiality of the alteration is a question to be decided by the court, without the aid of a jury; that any alteration is material if it affects the identity of the instrument or the rights and obligations of the parties to it, and that the question of the time when the alteration was made is a fact to be determined by the jury.
It is also held in all the States, except Missouri and New Jersey, that an immaterial alteration does not affect the validity of the writing.
An alteration by a stranger, without the knowledge of the grantee or obligee, while it cannot enlarge the obligations of the grantor or obligor, does not affect the right to enforce the writing as it was originally executed, and the intent with which the alteration is made is immaterial, unless it is fraudulent, in which event a court will not lend its aid. *Page 88 
The cases supporting these principles are collected in the valuable note to Burgess v. Blake, 86 Am. St., 79, and in the learned and comprehensive article on Alteration of Instruments, by Judge John F. Dillon, in 2 Cyc., 150.
Many other questions may arise as to the effect of the alteration of instruments, but in the midst of much conflict of authority we confine ourselves to those necessary to the consideration of the principal question presented by the appeal, which is, whether the burden is on the party claiming under a deed, on which an erasure or interlineation is apparent, to prove that it was made at the time of or before the execution of the deed, or is the burden on the party attacking the deed to prove that it was made after its execution.
The question is important, and many titles may depend on its correct solution, as it will frequently arise after the parties to the transaction are dead.
If it is held that the burden is on him who urges that the deed is void because of the erasure or interlineation, it may furnish the opportunity to the grantee to withhold the deed from registration, after he (109) has altered it, until the evidence is lost by which the wrongful act can be proven, and thus secure the title to property which was not conveyed to him; and if it is decided that the burden is on the party claiming under the deed, he may lose property for which he has paid, because of inability to prove that the erasure or interlineation was on the deed when delivered.
A brief summary of all the North Carolina cases bearing on the alteration of instruments which we have been able to find after diligent research shows that the question has not been settled in this State.
In Nunnery v. Cotton, 8 N.C. 222, it was held that any alteration by the obligee in a bond, whether material or not, avoided it. In this case the alteration was the cutting off the name of a witness on the bond.
In Pullen v. Shaw, 14 N.C. 238, held, that an alteration by the obligee in a bond avoids whether material or not, and by a stranger does so, if material. If no evidence is introduced, the question whether the alteration was made before or after execution is dependent on whether the alteration is favorable to the obligee or not.
In Sharp v. Bagwell, 14 N.C. 115, held, that equity would not relieve one who had cut off the name of a witness from the bond in ignorance of its effect.
In Mathis v. Mathis, 20 N.C. 60, the action was on a bond for $12.50, and the proof was that the bond was given for $7.40. Held, that the plaintiff could not recover $7.40, but that if he had sued for $7.40 he could have recovered that amount, as the alteration was made by a stranger. *Page 89 
In Blackwell v. Lane, 20 N.C. 113, held, that the addition of the name of a subscribing witness to a bond, without the consent of the obligor, is not an alteration, because not material.
In Davis v. Coleman, 29 N.C. 426, held, cutting off the name of one obligor and adding another avoided the bond as to all who did not consent to the change.
In Simms v. Paschall, 27 N.C. 276, that the fraudulent expunging of a credit on a bond was no alteration, because the (110) credit was no part of the bond.
In Smith v. Eason, 49 N.C. 38, held, that an alteration in a material part of a bond avoids it.
In Dunn v. Clements, 52 N.C. 59, held, that retracing the name of the obligor, which had faded, does not avoid, although the name was misspelled in retracing, the sound of the name being the same.
In Norfleet v. Edwards, 52 N.C. 457, the action was on an instrument to pay money, and the signature was that of a partnership. Two seals after the partnership name were erased and the word "witness," at the left of the paper, stricken out. The judge charged the jury that the burden was on the plaintiff to show that the erasures were made before or at the time of the execution. Held, error, because as the paper was signed by the partnership, the erasure was made to fix its character. The Court says: "In most if not in all the cases in which the contrariety of decision may be seen it will be observed that the erasures, interlineations, or rather alterations, were made in deeds, negotiable securities, or other instruments, whose nature and character were determined upon or fixed — that is, they either were intended to be, or were, at the time when the alterations were made, deeds or negotiable securities or instruments of some other particular kind. The instrument in the present case differs from them all in this particular, that the alteration was made for the very purpose of determining and fixing its character. With a seal it would be a deed, while if that were erased it would become a promissory note. If it were executed as a deed it could not bind all the partners, but if made as a promissory note it would have that effect. . . . Under such circumstances is it not a fair presumption that the seal was erased at the time when the instrument was given by the one party and accepted by the other?"
In Darwin v. Rippey, 63 N.C. 319, held, that the addition of the words "in specie," after "dollars," in a bond, with the consent of the payee and the principal, avoided the bond as to the surety.
In Long v. Mason, 84 N.C. 16, held, that the addition of the words "at 10 per cent," in a bond, by the principal, without the knowledge of the payee, a guardian, or of the surety, but with the consent of the ward, avoided the bond as to the surety. (111) *Page 90 
In Respass v. Jones, 102 N.C. 5, held, that where the vendee struck out his name in a deed and inserted that of his wife, to defraud his creditors, no title passed, and a court of equity would not aid him.
In Cheek v. Nall, 112 N.C. 370, a husband raised the amount of a bond signed by him and his wife; held, that the bond was void as to the wife. It was also held that an immaterial alteration would not avoid, such as changing the recited consideration in a mortgage, the description of the debt in the mortgage remaining unchanged.
In Howell v. Cloman, 117 N.C. 77, a note and mortgage were for $500 when signed, and for $1,000 when registered; held, that the burden was on the plaintiff to prove that the defendant consented to the change.
In Martin v. Buffaloe, 121 N.C. 35, held, that the insertion of the name of the attorney and the amount of his fee in a deed to secure creditors, with the consent of the grantor after he signed it, did not avoid the deed, because it was not a clause necessary to the operation of the deed.
In Wetherington v. Williams, 134 N.C. 279, the question was one of fact as to the time of the change, and the question of the burden of proof was not raised.
In Gaskins v. Allen, 137 N.C. 426, a married woman, while under age, signed a deed. After she became of age she signed another deed to the same party for the same land. Both deeds were registered under one probate, the commission authorizing it being dated before, and the date of probate after, she was twenty-one. A charge was approved placing the burden on the plaintiff, a subsequent grantee, to prove that the date of the probate had been changed.
In Perry v. Hackney, 142 N.C. 368, the grantee after probate struck out his name from a deed and inserted the name of his wife, without the consent of the grantor, and it was held that no title passed.
The authorities elsewhere are in hopeless confusion as to the (112) burden of proof.
Judge Freeman says, in the note to Burgess v. Blake, 86 Am. St., 128: "Among the almost innumerable decisions, and the conflict of authorities upon the subject of the presumptions arising from alterations apparent upon the face of the instrument, there seems to be but one principle upon which the authorities are in harmony. That is, where an alteration in an instrument is alleged to have been made, and such alteration is not apparent upon the face of the instrument, the burden of showing that the latter has been altered is upon the party who alleges it. This, however, seems to be the single note of harmony. Where the alteration is apparent, the authorities are hopelessly divided as to the presumptions arising from such apparent alteration. Any attempt to reconcile them would be useless, and an accurate classification of their varying views is impossible. They seem to fall, however, into four *Page 91 
general classes, each of which is representative of a view opposed to that of the others: (1) One line of cases holds that no presumption arises from an alteration apparent on the face of the instrument, but that the entire question of the time when the alteration was made is for the jury to consider in the light of all the evidence, intrinsic and extrinsic; (2) another holds that an alteration apparent on the face of the paper raises a presumption that it was made after execution and delivery: (3) a third line of authorities holds that the presumption that the alteration was made after execution arises only where the alteration or the facts surrounding it are suspicious; and, finally, it is held by another group of courts: (4) that an alteration apparent on the face of the paper is, without explanation, presumed to have been made before delivery. This classification of the authorities is, at best, approximate only, as many of the courts have taken compromise positions, holding the presumption to depend upon various matters, such as denial under oath that the paper was executed, the nature of the instrument, i. e., whether a specialty or not, etc."
As eminent authority may be found for either position, and as we have no precedent in this State to guide us, we must adopt that rule which, in our opinion, accords with the habits and customs of our people and which will, in the majority of cases at least, be (113) conductive to the settlement of controversies of this character according to the right.
A very large percentage of the deeds executed in this State are never seen by a lawyer until some question is raised as to title; they are written, in many instances, by men who know little or nothing of legal rules and who are not expert penmen, and the materials used — pen, ink, paper — are such as are gathered in the household, and frequently not the best.
Under these circumstances a mistake in writing the deed may be expected, and when discovered an erasure or interlineation follows naturally, without thought of the consequences. If two kinds of ink are present they would be used indiscriminately, and the draftsman would not hesitate to ask one sitting by to make a necessary change.
We do not doubt that 99 per cent of the erasures and interlineations that appear in deeds are made in this way, and from honest and proper motives, and if this is true it would seem to be wise and just to adopt a rule which will tend to preserve and sustain titles acquired by such deeds, although under it an injustice may occasionally result, and in our opinion it is safer, and in accord with the better public policy to hold, as we do, that the party claiming under a deed is entitled to introduce it in evidence, upon proof of its execution, and that the burden is on the party who assails it, on account of erasures or interlineations *Page 92 
appearing on its face, to satisfy the jury by the greater weight of the evidence that the erasures or interlineations were made after the execution of the deed.
A discussion of the numerous authorities in favor of this rule (and there are, perhaps, as many against it) would be useless, and we content ourselves by reference to a small number selected from many.
In Tatum v. Calomore, 71 E. C. L., 746, Lord Campbell says: "In Co. Litt., 225b, it is said that `Of ancient time, if the deed appeared to be raised or interlined in places material, the judges adjudged upon their view the deed to be void. But of latter time the judges have left that to the jurors to try whether the raising or interlining were (114) before delivery.' In a note upon this passage in Hargrave and Butler's edition of Coke upon Littleton it is laid down: `'Tis to be presumed that an interlining, if the contrary is not proved, was made at the time of making the deed.' This doctrine seems to us to rest upon principle. A deed cannot be altered, after it is executed, without fraud or wrong; and the presumption is against fraud or wrong."
This language was quoted with approval in Little v. Herndon, 77 U.S. 26, and the Court says, after citing Tatum v. Calomore, supra: "In the absence of any proof on the subject, the presumption is that the correction was made before the execution of the deed." And this last case was approved in Hanrick v. Patrick, 119 U.S. 156, the Court, after discussing the charge of the judge, saying: "At any rate, the presumption was that the erasure was made before the execution of the deed."
In Wilkes v. Caulk, 5 Md. 41, the Court says: "It is incumbent on the party who wishes to avoid a deed by its erasure to prove that the alteration was made after its execution and delivery"; and in Hopkins on Real Property, 429, it is said: "Where alterations or interlineations are present in a deed, the presumption is that they were made before the deed was delivered, though there are cases holding the contrary."
To the same effect see Hagan v. Insurance Co., 81 Iowa 330; Neil v.Case, 37 Am. Rep., 259; Wilson v. Hayes, 12 A. S., 761; 2 Cyc., 233 and 235.
This presumption is greatly strengthened by the facts appearing in this record that the deeds were registered in 1885, and until this day neither the grantor nor any one claiming under him has attacked their integrity; and the defendants have been in the actual occupation of parts of the land since 1879. The Supreme Court of the United States said in Malorin v. U.S.,68 U.S. 282, when speaking of an alteration in a deed, that the fact that no suspicion had been suggested for eighteen years was entitled to no little weight. *Page 93 
The jury will, of course, have the right, in determining when the erasure or interlineation was made, to consider any difference in ink and handwriting and other relevant circumstances, and if the deed has been withheld from registration, this circumstance, in the (115) absence of explanation, would be entitled to consideration and should have more or less weight according to the length of time elapsing and viewed in connection with any change in the condition of the parties to the deed.
If, however, the presumption was against the deed, it is doubtful if the plaintiff is in a position to take advantage of it, as it does not appear that he claims under the grantors in the deed.
Judge Dillon says, in Cyc., 2, 189: "If the parties affected by a change in an instrument do not complain thereof, others, who are not parties to the instrument or affected by the change, cannot, ordinarily, set up the change, unless there is evidence of fraud between the parties to the injury of the creditors. The alteration must relate to the parties to the particular instrument altered." See, also, Hockmork v. Richler, 16 Col., 263; Logue v. Smith, Wright (Ohio) 10; Asylum v. Houns (Ky.), 64 S.W. 642.
The exceptions to evidence cannot be sustained. If it be conceded that the answers of the surveyor to questions asked him were incompetent, it appears that he afterwards testified, without objection, that the deeds of the defendant covered the land claimed by her, which was all that was elicited by the examination objected to.
In our opinion the plat of the division of the lands of Elisha Wicker, father of the plaintiff, and the mortgage of the plaintiff to Elisha Watson, of date 20 March, 1891, were properly admitted; but if not, their introduction did not prejudice the plaintiff, as they were offered for the purpose of showing that Juniper Branch was the western boundary claimed by the plaintiff, and he admitted on cross-examination that Juniper Branch was one of his lines in the division of his father's land.
The objection to the form of the judgment is well taken. The finding of the jury establishes the fact that the plaintiff is not the owner of any part of the land in controversy, and the defendants allege, in their answer, that they are in possession of all the lands (116) which they claim.
The plaintiff must recover on the strength of his own title, and upon failure of proof by him the jury may well find that he is not the owner of the land, although satisfied that the defendant has no title.
There is no fact admitted by the pleadings or found by the jury which will support an affirmative judgment in favor of the defendants, and the judgment must be modified by striking out the clause, "but that *Page 94 
the defendants are the owners and entitled to the possession of said lands," and as thus modified it is affirmed.
The judgment will, of course, operate as an estoppel on the plaintiff, to prevent the further prosecution of an action on his behalf.
Modified and affirmed.